## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Maria Theresa Wilson )
1310 Decatur Street, NW )
Washington, DC  20011-4434 )
)
Plaintiff )          Civil No. _____
)
v. )
)
)
Marta Bertola )
17111 Clear Creek Drive )
Silver Spring, MD 20905 )
)
Dr. James E. Abell )
7102 Wells Parkway )
Hyattsville, MD 20782 )

Defendants

## **COMPLAINT**

(Third Party Spoliation of Evidence)

Plaintiff Maria Theresa Wilson, as and for her Complaint against Defendants  Marta Bertola and Dr. James E. Abell  respectfully alleges:

## **PARTIES**

1.      **Plaintiff Maria Theresa Wilson  ("Wilson")  is a citizen of the District of Columbia and she resides at** 1310 Decatur Street, NW, Washington, DC  20011.  She is a Judgment-Creditor of Vincent L. Abell ("Abell").

2.      **Defendant** Marta Bertola ("Bertola") is a citizen of Maryland who resides at 1711 Clear Creek Drive, Silver Spring, MD 20905.  Bertola is the estranged spouse of Vincent Abell.

1

3.      **Defendant Dr.** James Abell  ("Dr. Abell") is a citizen of Maryland who resides at 7102 Wells Parkway, Hyattsville, MD 20782. He is the father of Vincent Abell.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1).  This case is between citizens of different States, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

5.      Venue is proper pursuant to 28 U.S.C. §1391(a) because a substantial part of the events giving rise to Plaintiff's claims against the Defendants occurred within this judicial district and this judicial district is where a substantial part of the evidence at issue was located when it was destroyed or spoliated.

## FACTS COMMON TO ALL COUNTS

6.      Plaintiff Maria Wilson obtained a Judgment against Vincent Abell entered on April 13, 2007 in the Superior Court for the District of Columbia based on a jury verdict against Abell and Modern Management Company ("MMC)" for fraud related to Abell's mortgage rescue sham ("the Wilson Judgment").  The jury found that Abell and MMC defrauded the Plaintiff, and that she lost her home as a result of that fraud.   The Wilson Judgment obligated Defendant Abell to pay to Plaintiff Wilson $140,000 in compensatory damages, $2,000,000 in punitive damages, plus post-judgment interest at 6% from April 13, 2007 until the Judgment was paid.  By that same verdict, MMC was ordered to pay Wilson $140,000 in compensatory damages and $1,100,000 in punitive damages, plus post-judgment interest at 6%.  By Order dated December 14, 2011, Abell and Modern Management Company were further ordered to pay the sum of $428,520.91 in attorney fees and costs.

7.      On March 5, 2013 Vincent Abell filed for bankruptcy.  The Wilson Judgment and

the attorney fee award were found by the Bankruptcy Court to be non-dischargeable debts  under

11 U.S.C. §523(a)(2)(A) as they were debts incurred as a result by fraud by Vincent Abell.

*Wilson v. Abell (In re Abell),* Bankr. D. Md, Adversary Proceeding No. 13-00312 (Order dated

July 25, 2013).

8.      After entry of the Wilson Judgment,  Abell and Bertola created or took control of

numerous entities, partnerships, and corporations which Abell  uses to conduct his business as

his alter egos and avoid payment of  the Wilson Judgment.  The vehicles that Abell has used for

the purpose of hiding his assets and evading his creditors since the entry of the Wilson Judgment

include  American Trust, LLC, American Security, LLC, Phoenix Real Estate, LLC,  Phoenix

Real Estate2, LLC,  Asset Lending Corporation, Columbia Security, LLC,  Modern Management

Company Employee Benefit Trust ("MMC-EBT"), and the successor entities to MMC-EBT.

The information relating to these entities and Abell's use and control of those entities was stored

on various computers located at the offices of Phoenix Real Estate ("PRE") in the District of

Columbia.

9.      Plaintiff Wilson has attempted to collect on the Wilson Judgment, but Abell has

attempted to evade all collection efforts of Wilson by destroying relevant data, making

fraudulent conveyances, hiding his assets, and disobeying legal orders to disclose his assets and

transactions.  Abell had violated the Court Orders regarding discovery of his assets and those of

his related entities.

10.     Defendants   Bertola  and  Dr. James Abell have  materially aided, and continues

to aid, Abell's evasion of disclosure of his assets and transfers of assets.   This long history of

evasion is laid out in a Superior Court Order of March 1, 2013, in which the Court found that

Abell has made "a virtual cottage industry" out of evading the payment on the Wilson Judgment.

11.     One of the means by which Wilson sought to collect on her judgment was by the

service of attachment of bank accounts which Wilson believed and understood to be owned and

controlled by Vincent Abell. This included an account at **Capital Bank, N.A. which Wilson**

**attempted to attach on** July 12, 2012. As further alleged herein, among the evidence that Bertola

destroyed and spoliated was the information relating to Abell's true ownership of this account

and that money in that account was actually the property of Abell.

12.     Wilson continued to search for assets and accounts of Vincent Abell  in post

judgment proceedings by serving discovery requests on persons related to Abell, including Marta

Bertola,  Dr. James Abell and various entities controlled by Vincent Abell in one manner or

another.  The service of discovery requests for relevant information included subpoenas served

on Marta Bertola, Phoenix Real Estate, LLC, Asset Lending Corporation, and Dr. James Abell.

The purpose of these subpoenas was to locate assets of Vincent Abell which were either in his

name or in the name of one of his alter-egos.

13.     For example, on or about July 2, 2012 Wilson served a non-party subpoena on

Marta Bertola that called for Marta Bertola to produce various documents relating to Abell's

assets and accounts.  The subpoena covered electronically stored information ("ESI").   On or

about July 25 2012 Wilson served a non-party subpoena on Asset Lending Corporation that

called for Asset Lending Corporation  to produce various documents relating to Abell's assets

and accounts.  That subpoena also covered electronically stored information.  Asset Lending

Corporation is an entity which Dr. Abell claimed ownership but for which Vincent Abell used as

an alter ego and as an instrument to hide or shelter funds from Wilson's post-judgment collection actions.

14.     In papers filed in the Superior Court in April 2012 Wilson made it known to Bertola and Dr. Abell  that she  was going to seek discovery in aid of execution of her Judgment against Marta Bertola, Dr. James Abell, Asset Lending Corporation and other person or entities related to Abell.  The targets of these subpoenas or requests for documents included documents and ESI which Bertola controlled or maintained and documents and ESI of Dr. Abell which Dr. Abell entrusted to  Bertola and over which she, on behalf of Dr. Abell, maintained physical possession.

15.     Starting no later than April 2012 both  Bertola and Dr. Abell knew that Wilson would be seeking documents and ESI relating to Abell's properties, accounts, entities, and transfers of funds and accounts for purposes of locating assets and accounts and for purposes of showing that accounts nominally in the name of another was actually the account or property of Abell and thereby subject to attachment or garnishment by Wilson.

16.     On July 26, 2012, Wilson's counsel  also sent a letter to Bertola and  Abell advising them that Ms. Wilson intends "to seek the imaging and discovery of the contents of the computers and other electronic storage devices used by each of you, professionally or personally, whether at your offices or residences."  The purpose of this letter was to give notice to Abell and Bertola that they needed to preserve relevant ESI in connection with the discovery in Wilson's post-judgment collection actions which were to follow.

17.     Thereafter, Bertola began to intentionally, negligently or recklessly destroy and spoliate documents and ESI in her possession and control which was necessary for Wilson to collect on her judgment.  This destruction and spoliation of documents and ESI  included relevant documents and ESI  of Dr. Abell which Dr. Abell entrusted to Marta Bertola and over which she, on behalf of Dr. Abell, maintained physical possession.   These included relevant electronically stored data of Dr. Abell and his entities which were stored by Bertola, at Dr. Abell behest, on the computers at PRE.

18.     The full extent of this evidence destruction/spoliation by Bertola is not yet known due to the nature of the "wiping" program Bertola used to destroy evidence.  However, Bertola destroyed or spoliated relevant documents and ESI, mostly in computers located in the District of Columbia, in the following manners and ways:

(a) In April 2010, Abell's real estate business was the subject of an FBI investigation. The FBI seized the business's paper documents and imaged the computers which stored ESI relating to Abell's businesses and accounts.  The FBI scanned the paper documents and provided electronic copies to Ms. Bertola on approximately  CDs.  Ms. Bertola, however, on a date uncertain threw away the CDs without backing them up, thus resulting in the loss of key data related to Abell's accounts and businesses.

(b) Starting on or about August 13, 2012  Bertola installed the "Wipe Free Space" program of a computer utility called CCleaner on various computers she maintained for herself, Vincent Abell and Dr. Abell at computers at the offices of Phoenix Real Estate, LLC   ("PRE") in the District of Columbia.  The primary purpose of the Wipe Free Space function of CCleaner is to destroy ESI and make ESI unrecoverable.

(c) On August 13, 2012, Bertola used the Wipe Free Space feature of CCleaner to destroy ESI on computer used for storing financial data at PRE.

(d) On September 21, 2012, Bertola used the Wipe Free Space feature of CCleaner to destroy evidence on a computer which Abell used at PRE.

(e) On September 23, 2012, September 24, 2012, and September 25, 201 Ms. Bertola used the Wipe  Free Space feature of CCleaner to destroy data on her own  personal computer at PRE.

(f) On September 24, 2012, Bertola used the Wipe Free Space utility of  CCleaner on two additional computers at PRE  to destroy  financial data and evidence stored on those computers; and

(g) On September 24, 2012 Bertola deleted from her computer and the computer used by Vincent Abell information and data relating to bank accounts used by Abell.

19.     The use of the Wipe Free Space utility of CCleaner on these computers came just days before those computers were to be forensically imaged at PRE on September 24, 2012 per a prior Superior Court order in order to fully preserve evidence for the benefit of Wilson.

20.     Just prior to the forensic imaging of the computers at PRE, Bertola had the hard drives of some of those computers reformatted so that data relating to Abell's accounts and financial information would be destroyed.

21.     Bertola admitted in the fall of 2012 to a colleague that she had used a program to clean up all the computers for the information that she did not want Wilson to have.

22.     Soon after Abell filed for bankruptcy on March 5, 2013, the Bankruptcy Court in Maryland lifted the automatic stay in order to allow Wilson to  continue to collect data as to Abell's assets and accounts.  This order was entered on April 25, 2013.  *In re Abell*, Bankr. D. Md, Case 13-13847 (Doc. 67).   While Wilson was  then continuing her asset search, Bertola thereafter  destroyed or spoliated relevant documents and ESI in the following  additional manners and ways:

(a) On December 6, 2013  the Wipe Free Space utility of CCleaner was updated  by Bertola and used to wipe files and related records on a computer at PRE used to store financial records relating to Abell.

(b) On March 1, 2014 the Wipe Free Space utility of  CCleaner was used by Bertola  to wipe files and related records from the computer at PRE  used primarily to run the "Champion" accounting program that Bertola and Abell used for various entities.

(c) On March 9, 2014 the Wipe Free Space utility of CCleaner was used by Bertola at PRE to wipe files and related information from Abell's desktop computer and a computer used by an employee of PRE.

(d) On May 9, 2014 the Wipe Free Space utility of CCleaner was used by Bertola to wipe files and related information from a computer used by an employee of PRE.

(e) On May 11, 2014 the Wipe Free Space utility of CCleaner was used by Bertola to wipe files from a computer used by an employee of PRE.

(f) On June 1, 2014 the Wipe Free Space function of CCleaner was used by Bertola to wipe files and related information from three computers at PRE, including Abell's desktop computer.

(g) On June 2 and 9, 2014 the Wipe Free Space function of CCleaner was used by Bertola to wipe files and related information from the personal computer that Bertola used at her home.

(h) On June 10, 2014 the Wipe Free Space function of CCleaner was used by Bertola to wipe files from the laptop computer used by Bertola.

(i) On June 18 and June 20, 2014 the Wipe Free Space function of CCleaner was used by Bertola to wipe files and related information from Bertola's desktop computer at PRE; and

(j) On June 21, 2014 the Wipe Free Space function of CCleaner was used by Bertola to wipe files and related information from the personal computer Bertola used at her residence.

The aforesaid uses of Wipe Free Space in May and June 2014 occurred just before the computers at PRE and Bertola's personal computers were to be forensically imaged in order to preserve relevant data pertaining to Abell's assets and accounts.

23.     On various dates in 2013 and 2014 Bertola also spoliated and destroyed relevant data and ESI by (i) replacing the hard drives of various computers at PRE and then discharging the replaced hard drive, (b) reformatting the operating systems of various computers at PRE which destroyed the data stored in those computers prior to reformatting, and (iii) discarding various external hard drives and flash drives that contained relevant financial information. Among the external drives that Bertola discarded was a "MyBook" drive that Bertola threw away just days before it was to be imaged.

24.     The computers from which Bertola spoliated and destroyed and wiped evidence and files all contained documents, files and data relating to Abell's assets, accounts, properties, interests in accounts and properties, Abell's transfers of properties and interest,  Abell's secret or hidden  interests  in accounts and properties, and other data that would be relevant to a judgment-creditor like Wilson in post-judgment collection activities.

25.     The aforesaid  spoliated/destroyed evidence was necessary for Wilson to (a) locate Abell's assets and accounts, (b) promptly locate relevant accounts and properties for attachment and garnishment, and (c)  identify assets/accounts of Abell which are hidden in the names of other or improperly transferred to another so that those hidden or transferred accounts could be properly garnished or attached.


### COUNT  I
(Spoliation of Evidence by Bertola)


26.     Plaintiff  incorporates and realleges paragraphs 1 to 25 as if re-plead in full in this Count.

27.     Bertola knew that the above-referenced evidence and documents she destroyed/spoliated  were relevant to Wilson's post-judgment collection actions, both current and prospective, and Bertola  had a duty to Wilson not to destroy/spoliate such data and evidence.

28.     As set forth above, Bertola intentionally, negligently and/or recklessly spoliated and destroyed documents, evidence and ESI which  caused injury and damage to Wilson and which significantly impaired the ability of Wilson to find and locate Abell assets and then collect on her Judgment in her post-judgment collection actions, both past and in the future.

29.     There is a direct causal relationship between the destruction and spoliation of the aforesaid evidence by Bertola and Plaintiff's inability to collect on her Judgment.  The destruction/spoliation of this evidence has allowed Abell to  (a)  hide assets which Wilson will not be able to locate because of destruction/spoliation,  (b)  delay discovery of assets so that in the interim Abell will be able to dissipate  assets for his own use or the use and benefit of his family or related entities, and (c) impair the ability of  Wilson to timely identify accounts/assets, such as the account at Capital Bank, N.A.,  that could have otherwise been garnished or attached in her post-judgment collection actions.

30.     Had Bertola not destroyed/spoliated the evidence as alleged herein Wilson' post-judgment collection efforts and lawsuits against related person/entities would have enjoyed a substantial probability of total  success if the destroyed/spoliated evidence had not be destroyed or its discovery delayed by spoliation. Among other things, the destruction/spoliation of evidence impaired Wilson's ability to successfully pursue attachment of Abell's accounts at such banks as Capital Bank, N.A.

31.     Bertola's intentional, negligent, and reckless destruction of the evidence as alleged herein also caused the needless expenditure of time and effort and expense  by Wilson's counsel to collect on the Wilson Judgment on behalf of Wilson.

32.     Bertola deliberately, intentionally and successfully hid her evidence destruction/spoliation from Wilson so that it was not discovered until December 2014.

## COUNT  II
(Vicarious Liability of Dr. Abell)


33.     Plaintiff  incorporates and realleges paragraphs 1 to 32 as if re-plead in full in this

Count.

34.     Defendant Dr. Abell knew that he had entrusted to Bertola his business records

relating to his dealing with Vincent Abell, and Defendant Dr. Abell knew, or should have

known, that his business records pertaining to Vincent Abell would be subject to post-judgment

discovery requests from Wilson because Dr. Abell was aware from communications with Abell

and Bertola as to the actual and expected nature of the Wilson post-judgment collection efforts.

35.     Defendant Dr. Abell  knew,  or should have known,  that the above-referenced

evidence and documents that were  destroyed/spoliated  were relevant to Wilson's post-judgment

collection actions, both current and prospective, and Dr. Abell  had a duty to Wilson not to

destroy/spoliate such data.

36.     At all times material hereto, Defendant Dr. Abell had entrusted to Bertola in her

personal computer and those at Phoenix Rea Estate his files and documents and computer stored

data relating to his son Vincent Abell, his son's business and those businesses such as Asset

Lending Corporation in which his son, Vincent Abell, used to hide assets and comingle funds.

Dr. Abell also entrusted his property-related records to Bertola as part of her management of his

properties in which Bertola, through PRE, would act as property manager for various of Dr.

Abell's properties.  As a result of this deliberate entrustment of records and ESI,  Bertola had

dominion and control over the aforesaid relevant records of Dr. Abell which were

destroyed/spoliated.

37.     These same documents, files and computer stored data contained information which Defendant Dr. Abell entrusted to Defendant Bertola are among the documents, files and ESI which Bertola destroyed/spoliated as herein alleged.

38.     Plaintiff Wilson was  damaged and injured, as herein alleged, as a result of the spoliation/destruction of the Dr. Abell records relating to Abell's assets and accounts.

39.     Defendant Dr. Abell is liable for the spoliation/destruction of the records he entrusted to Bertola.


WHEREFORE Plaintiff Maria Wilson demands judgment against Defendants Marta Bertola and James Abell, jointly and severally, in the amount of Three Million Dollars ($3,000,000)  plus accrued interest on the Wilson Judgment, post-judgment interest, attorney fees, and costs. Plaintiff Maria Wilson further prays for such other relief that is just and proper under the circumstances,

Respectfully Submitted,


By ____/s/_____
Randell C. Ogg (Bar No. 22623)
Law Offices of Randell C. Ogg
1150 Connecticut Avenue, NW
Ninth Floor
Washington, D.C. 20036
Phone:  (202) 862-4323
Fax:  (202) 828-4130
rogg@bode.com
*Counsel for Plaintiff Maria Wilson*

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues triable by a jury.


\_\_\_\_/s/_____
Randell C. Ogg